IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT IN AND
FOR ORANGE COUNTY, FLORIDA

JOHN E. VINCENT,

Plaintiff,

v.                                                    CASE No.:

THE STRAYER UNIVERSITY
CORPORATION,

Defendant.
_____/

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JOHN E. VINCENT ("Plaintiff" or "VINCENT"), by and through his undersigned counsel, sues Defendant, THE STRAYER UNIVERSITY CORPORATION ("Defendant" or "STRAYER"), and alleges as follows:

### JURISDICTION

1. This is an action for race, sex and age discrimination brought pursuant to the Florida Civil Rights Act of 1992 ("FCRA"), §§760.01-760.11, Florida Statutes, seeking damages in excess of $15,000, exclusive of interest, attorney's fees and costs.

### VENUE

2. The acts and omissions that give rise to this action occurred in Orlando, Orange County, Florida. Venue is therefore proper in this Circuit and before this Court, pursuant to §47.011, Florida Statutes.

### PARTIES

3. Plaintiff VINCENT is an adult White/Caucasian male individual over the age of 40 and a resident of Oviedo, Seminole, County, Florida.

1

4. At all times material hereto, Plaintiff was and is employed by Defendant STRAYER as a Full-time Faculty member at STRAYER's Orlando East campus.

5. At all times material hereto, VINCENT was a "person" within the meaning of §760.02(6) of the FCRA.

6. Upon information and belief, Defendant STRAYER is a *non*-Florida resident (i.e. foreign) corporation, but authorized and registered to do business in Florida, including Orlando, Florida; and with a Registered Agent in the State of Florida.

7. At the time of the acts complained of herein, STRAYER employed in excess of twenty (20) or more persons in each of the current and preceding years.

8. In addition, STRAYER is engaged in an industry affecting commerce and has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the year the unlawful employment practices took place or the preceding calendar year.

9. Accordingly, at all times material hereto, Defendant STRAYER was an "employer" as defined by §760.02(7) of the FCRA.

10. At all times material hereto, STRAYER was and is the employer of Plaintiff VINCENT.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

11. On or about January 22, 2014, Plaintiff VINCENT timely filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"), which was dual filed with the FCHR pursuant to the Workshare Agreement between the two agencies, alleging discrimination based on Plaintiff's race, sex and age. A copy of the Charge is attached hereto as **Exhibit "1"**.

2

12. The FCHR failed to reach a determination as to the merits of VINCENT's Charge within one hundred eighty (180) days since the date of filing the Charge, with his Charge thereby statutorily cloaked with a presumptive finding of "cause," pursuant to §760.11(8) of the FCHR, thereby authorizing VINCENT to proceed with the instant suit, pursuant to §760.11(4) (a), Florida Statutes.

13. Accordingly, Plaintiff VINCENT has satisfied any and all administrative prerequisites and all conditions precedent prior to the filing of this action, pursuant to the FCRA.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

14. VINCENT is a White/Caucasian male who is currently 60 years of age.

15. Plaintiff VINCENT was hired by STRAYER on or about January 2, 2008 as adjunct faculty by STRAYER's former Orlando East Campus Dean Seth Kanowitz.

16. On or about April 2, 2012, VINCENT was appointed by former Orlando East Campus Dean, Dr. Lawrence E. Green, as full-time faculty for the Orlando East Campus, the position VINCENT held until the time of his involuntary termination.

17. At the time of his termination, VINCENT was teaching Marketing, Business Management, and Science courses at both the undergraduate and graduate school levels.

18. While employed with STRAYER, VINCENT received a promotion to full-time faculty, resulting in corresponding pay raises.

19. VINCENT incurred no discipline while employed with STRAYER.

20. VINCENT was well respected by his peers and superiors.

21. VINCENT also received positive performance evaluations.

3

22. On December 16, 2013, and without any prior notice, VINCENT was verbally informed of his involuntary termination from his position as a full-time faculty member at STRAYER's Orlando East campus.

23. In fact, the termination was without notice so much so that VINCENT had already been provided a teaching calendar for January, 2014, with assigned courses to teach and with students enrolled.

24. VINCENT was terminated by STRAYER's Orlando East Dean, Dr. Ann Pohira-Vieth ("Dr. Vieth"), who stated that VINCENT's position was being eliminated, allegedly due to low enrollment.

25. Associate Provost, Dr. Ulysses Weakley ("Dr. Weakley"), who is Black/African-American, was a witness by telephone to the conversation, as he listened in on the termination meeting.

26. The termination meeting consisted primarily of Dr. Vieth reading to VINCENT a set of talking points that she admitted had been prepared by STRAYER's attorney regarding the termination.

27. During Dr. Vieth's presentation on December 16, 2013, she indicated that one (1) full-time faculty member had to be let go from STRAYER's Orlando East campus and one (1) from STRAYER's Sand Lake campus.

28. Because STRAYER's Orlando East campus only had two full-time faculty members at the time, Dr. Anne Marie Keyes ("Dr. Keyes"), a White/Caucasian female, and VINCENT, either Dr. Keyes or VINCENT had to be let go, according to Dr. Vieth.

29. In Dr. Vieth's talking points, she claimed that VINCENT had been selected for non-renewal (i.e. involuntary termination), "based on a review of our

4

[STRAYER's] full-time faculty conducted by the regional and corporate academic leadership that looked at a number of different factors, including the mid-year assessment, SOP and faculty observations course, and area of concentration."

30. However, VINCENT's overall performance in the majority of the purported criteria areas exceeded that of Dr. Keyes.

31. In fact, VINCENT had received a perfect evaluation score (100%) in January, 2013 during a comprehensive four (4) hour classroom observation, for which a former STRAYER Dean, Dr. Lawrence Green, informed VINCENT was extremely rare.

32. With respect to comparative areas of concentration, VINCENT had a lengthy approved course list and had actually taught either on-campus or online ten (10) courses.

33. Just a week before his involuntary termination, at STRAYER's request, VINCENT began the process of preparing for his first online delivery of a new business course. This was one of five (5) business courses that STRAYER had already placed on VINCENT's full-time faculty schedule for the Winter Quarter that was to begin January 6, 2014.

34. For the current version of one course, VINCENT even served as subject matter expert, rewriting the lectures and PowerPoint presentations for half the course.

35. Upon information and belief, Dr. Keyes has not been asked to serve as a subject matter expert in any instructional development initiatives.

36. In addition, in contrast to the courses that VINCENT taught for STRAYER, Dr. Keyes focused on a rather narrow selection of courses, primarily in humanities, religion and philosophy.

37. Dr. Vieth also knew that VINCENT lived relatively close to STRAYER's Orlando East campus, and she and Maritza Gutierrez, Academic Assistant to Dr. Vieth repeatedly took advantage of VINCENT's relative proximity and flexibility, as did Dr. Green, regarding short notice needs for campus coverage.

38. VINCENT never refused anyone's calls for assistance regarding short notice substitutions, which was an additional asset and advantage that he possessed over Dr. Keyes.

39. In contrast, Dr. Keyes resided in the St. Petersburg area, an approximate three hour drive from STRAYER's Orlando East campus and, because of such, was not in a position to perform such additional services for STRAYER.

40. Notably, Dr. Vieth had no one at all in metro Orlando by which to replace VINCENT to teach a graduate marketing course and an undergraduate science course once he was involuntarily terminated.

41. Based on such, as well as her statement to a co-worker after his termination, upon information and belief, Dr. Weakley was the final decision maker regarding VINCENT's termination.

42. Specifically, shortly after VINCENT's termination, Dr. Vieth confirmed to the co-worker that the termination decision was not within her scope of authority.

43. Moreover, the alleged "lay off" decision was not made on a campus by campus approach but, upon information and belief, by Dr. Weakley.

44. In fact, all three (3) of STRAYER's campuses (Orlando East, Sand Lake, and Maitland), operated under the supervision of the same Associate Provost, Dr. Weakley.

6

45. In addition, the total pool of candidates terminated from STRAYER's campuses reveals that a majority were over the age of 41 (See Exhibit B to attached Charge).

46. Of the employees who were ages 30-41, a mere two (2) full-time faculty were terminated system-wide from a total available pool of 33 employees, or 6%.

47. Above that age (41), however, STRAYER appears to have targeted its older faculty for lay off.

48. Specifically, of employees who were ages 42-57, there were 32 full-time faculty terminated out of a possible 122, or approximately 26%.

49. Of employees from ages 58-79, there were 27 who were terminated out of a possible 104, or again, approximately 26%.

50. Faculty above the age of 41, such as VINCENT, were terminated at over four times the rate as those 41 and younger.

51. Furthermore, neither of the two (2) full-time faculty were released from STRAYER's Maitland Campus, despite Maitland being the poorest performing and smallest of its three (3) Metro Orlando campuses.

52. The other full-time faculty at STRAYER's Maitland campus was a female, Lateefa Muhammad ("Muhammad"), who was approximately age 34 at the time and is also an attorney.

53. Like Dr. Weakley, Muhammad is also Black/African-American.

54. In addition to her more narrowed course availability, Muhammad possessed less seniority with STRAYER than VINCENT, and much less experience as both a university instructor and business professional.

7

55. Upon information and belief, STRAYER's contention that its decisions regarding renewal or non-renewal of full-time faculty contracts was made at the campus level, i.e. by each campus Dean, is untrue.

56. Such assertion was knowingly false and a pretext to provide an ostensibly legitimate basis to terminate VINCENT, but with the real reason for STRAYER's termination based upon VINCENT's age, race and sex.

57. The alleged "lay off" decision was not made on a campus by campus approach but, upon information and belief, by Dr. Weakley, who oversaw all three (3) STRAYER campuses.

58. Furthermore, Plaintiff VINCENT was substantially more qualified than Dr. Keyes and Muhammad.

59. In fact, VINCENT scored higher than Dr. Keyes in a majority of the performance-based metrics.

60. No legitimate business reasons existed under Defendant STRAYER's policies, past practices, procedures and/or supervisory instructions to justify the involuntary termination of VINCENT in the form of a layoff, with the proffered reasons (scoring lower on the performance-based metrics) being a mere pretext for age, race and/or sex discrimination.

61. Plaintiff's age, race and/or sex was the real reason that he was terminated and such constitutes discrimination on the basis of age, race and sex in violation of Florida's Civil Rights law.

62. STRAYER's agents, managers, officers and/or directors, primarily through Dr. Weakley and Dr. Vieth, actively and knowingly participated in the

discriminatory personnel action against VINCENT because of his age, race and/or sex in violation of his civil rights.

63. STRAYER's agents, managers, directors and/or officers, primarily through Dr. Weakley and Dr. Vieth, possessed constructive and/or actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage to VINCENT would result and/or acted with such reckless disregard or absence of reasonable care to constitute a conscious disregard or indifference to the rights of VINCENT, and/or acted with such gross negligence that they contributed to VINCENT's damages, injuries and losses.

64. As a direct and proximate result of the discrimination complained of herein, Plaintiff VINCENT has suffered and continues to suffer financial damage and loss, including lost wages and benefits.

65. Plaintiff has also incurred damage and loss to his career path and future earnings, further career opportunities, in addition to other economic and non-economic losses.

66. As a direct and proximate result of the discrimination complained of in this action, Plaintiff has also suffered mental anguish, stress, humiliation, and emotional distress.

67. The conduct of Defendant STRAYER as complained of herein was intentional, malicious, oppressive, wanton and in willful disregard of the civil rights of Plaintiff.

68. Plaintiff has retained the undersigned counsel and is obligated to pay for said services.

69. Furthermore, if Plaintiff prevails in this matter, Plaintiff is entitled to recover his reasonable attorney's and costs of this action from the Defendant, pursuant to §760.11(5), Florida Statutes.

## COUNT I

### VIOLATION OF THE FCRA BASED ON AGE DISCRIMINATION

70. This is an action for unlawful age brought pursuant to §§760.01 – 760.11, Florida Statutes, the Florida Civil Rights Act ("FCRA").

71. Plaintiff VINCENT realleges and incorporates paragraphs 1 through 69 of this Verified Complaint as if set forth in full herein.

72. The actions of STRAYER described herein including, but not limited to, those set forth in paragraphs 45 – 50, 52, 54, 56, 58 and 60 - 63, constitute discrimination against Plaintiff based upon his age, as VINCENT was more qualified to be retained than his younger peer, Muhammad.

73. Specifically, by discriminating in such fashion against VINCENT as set forth herein, STRAYER violated §760.10(1)(a), Florida Statutes, which makes it unlawful "to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's...age...."

WHEREFORE, Plaintiff VINCENT demands judgment against Defendant as follows:

(a). Full and complete back pay and benefits, including all sums of money Plaintiff would have earned had he remained as a full-time faculty member, less interim earnings, through the date of trial in this matter;

(b).  Pre-judgment interest on any sum awarded under (a);

(c).  Compensatory damages for emotional anguish, pain and suffering;

(d).  Reinstatement to his former position, or front pay in lieu of reinstatement;

(e).  Punitive damages, if deemed warranted;

(f).  His reasonable attorney's fee and costs pursuant to §760.11, Florida Statutes, if he prevails in this matter; and

(g).  Such other relief as this Court deems just and equitable.

## COUNT II

### VIOLATION OF THE FCRA BASED ON RACE DISCRIMINATION

74. This is an action for unlawful race discrimination brought pursuant to §§760.01 – 760.11, Florida Statutes, the Florida Civil Rights Act ("FCRA").

75. Plaintiff VINCENT realleges and incorporates paragraphs 1 through 69 of this Verified Complaint as if set forth in full herein.

76. The actions of STRAYER described herein including, but not limited to, those set forth in paragraphs 30 – 39, 52, and 60 – 63, constitute discrimination against Plaintiff based upon his race, as VINCENT was more qualified to be retained than his minority peer, Muhammad.

77. Specifically, by discriminating in such fashion against VINCENT as set forth herein, STRAYER violated §760.10(1)(a), Florida Statutes, which makes it unlawful "to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's...race...."

11

WHEREFORE, Plaintiff VINCENT demands judgment against Defendant as follows:

(a). Full and complete back pay and benefits, including all sums of money Plaintiff would have earned had he remained as a full-time faculty member, less interim earnings, through the date of trial in this matter;

(b). Pre-judgment interest on any sum awarded under (a);

(c). Compensatory damages for emotional anguish, pain and suffering;

(d). Reinstatement to his former position, or front pay in lieu of reinstatement;

(e). Punitive damages, if deemed warranted;

(f). His reasonable attorney's fee and costs pursuant to §760.11, Florida Statutes, if he prevails in this matter; and

(g). Such other relief as this Court deems just and equitable.

## COUNT III

### VIOLATION OF THE FCRA BASED ON SEX DISCRIMINATION

78. This is an action for unlawful sex discrimination brought pursuant to §§760.01 – 760.11, Florida Statutes, the Florida Civil Rights Act ("FCRA").

79. Plaintiff VINCENT realleges and incorporates paragraphs 1 through 69 of this Verified Complaint as if set forth in full herein.

80. The actions of STRAYER described herein including, but not limited to, those set forth in paragraphs 50 – 63, constitute discrimination against Plaintiff based upon his sex (male), as VINCENT was more qualified to be retained than his female peers, Dr. Keyes and Muhammad.

81. Specifically, by discriminating in such fashion against VINCENT as set forth herein, STRAYER violated §760.10(1)(a), Florida Statutes, which makes it unlawful "to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's...sex...."

**WHEREFORE**, Plaintiff VINCENT demands judgment against Defendant as follows:

(a). Full and complete back pay and benefits, including all sums of money Plaintiff would have earned had he remained as a full-time faculty member, less interim earnings, through the date of trial in this matter;

(b). Pre-judgment interest on any sum awarded under (a);

(c). Compensatory damages for emotional anguish, pain and suffering;

(d). Reinstatement to his former position, or front pay in lieu of reinstatement;

(e). Punitive damages, if deemed warranted;

(f). His reasonable attorney's fee and costs pursuant to §760.11, Florida Statutes, if he prevails in this matter; and

(g). Such other relief as this Court deems just and equitable.

### RESERVATION OF RIGHTS

Plaintiff VINCENT reserves the right to amend this Complaint to seek punitive damages against Defendant STRAYER in accordance with the requirements of §768.72, Florida Statutes.

### DEMAND FOR JURY TRIAL

Plaintiff VINCENT hereby respectfully demands trial by jury on all issues triable

of right before a jury, as permitted.

DATED this /0th day of October, 2014.

Respectfully submitted,

s/ Gary D. Wilson
Gary D. Wilson, Esq.
Florida Bar No. 0846406
WILSON MCCOY, P.A.
711 N. Orlando Ave., Suite 202
Maitland, FL 32751
Telephone: (407) 803-5400
Facsimile: (407) 803-4617
E-mail: gwilson@wilsonmccoylaw.com
Attorneys for Plaintiff John E. Vincent

### VERIFICATION

Personally appeared before the undersigned, JOHN E. VINCENT, who being first duly sworn, deposes and says that the allegations of this Verified Complaint, consisting of paragraphs 1 through 81, inclusive, are true and correct to the best of his knowledge, information and belief.

JOHN E. VINCENT

STATE OF FLORIDA )
COUNTY OF ORANGE )

The foregoing instrument was acknowledged before me this 9th day of October, 2014, by John E. Vincent, who is personally known to me or who has produced FL Dr. Lic. as identification, and who did take an oath.

MICHAEL J. AUGELLO
Notary Public - State of Florida
My Comm Expires Jul 14, 2018
Commission # FF 140434
Bonded through Ashton Notary Assc

Notary Public – State of Florida at Large
My Commission Expires: 7/14/18

14